| | |
|---|---|
| **KRISTINE NADLER,** | |
| *Plaintiff*, | |
| v. | Civil Action No.: _____ |
| **TRIHEALTH, INC., and TRIHEALTH G, LLC** | |
| *Defendant.* | |

## COMPLAINT

Plaintiff Kristine Nadler files this action for damages against Defendants TriHealth, Inc. and TriHealth G, LLC (collectively, "TriHealth") for religious and disability-based discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") and Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the Ohio Civil Rights Act, Ohio Rev. Code §§ 4112, *et seq.* ("OCRA"), and in further support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and TriHealth maintains its principal place of business and conducts substantial business in this district.

3.      This Court is authorized to grant Ms. Nadler's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

4. Plaintiff Kristine Nadler ("Ms. Nadler") is an adult resident of Butler County, Ohio and a former TriHealth employee. At all times relevant, Ms. Nadler was employed by Defendant TriHealth, Inc. as a Clinical Dietian until she was discriminated against and retaliated against because of her religion and disabilities. Specifically, Plaintiff is a devout Christian with sincerely held religious beliefs that conflicted with TriHealth's mandatory COVID-19 vaccination policy. Ms. Nadler is also a disabled person within the meaning of 42 U.S.C. § 12102(1), in that Plaintiff suffers from an autoimmune disorder, anemia, and hypothyroidism, among other disabilities; all of which are physical or mental impairments that substantially limit one or more of her major life activities, including concentrating, learning, performing manual tasks, thinking, sleeping, breathing, learning, reading, concentrating, communicating, and working. TriHealth, Inc. also regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A) at all times relevant.

5. Defendant TriHealth, Inc. is an Ohio non-profit corporation and Plaintiff's former employer within the meaning of 42 U.S.C. § 12111(5). TriHealth, Inc. engaged in an industry affecting commerce and had more than 25 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. As an employer, TriHealth, Inc. is subject to the provisions of Title VII which requires employers (such as TriHealth, Inc.) to reasonably accommodate its employees' (such as Ms. Nadler) sincerely held religious beliefs. TriHealth, Inc. is also subject to the provisions of the ADA prohibiting discrimination on the basis of an employee's (such as Ms. Nadler) qualifying disabilities.

6. Defendant TriHealth G, LLC is an Ohio corporation and upon information and belief, a subsidiary corporate entity under its parent company, TriHealth, Inc. At all times relevant, TriHealth G, LLC employed more than fifteen (15) employees and is therefore subject to Title VII

2

and the ADA; both of which require which requires employers to reasonably accommodate their employees' sincerely held religious beliefs and disabilities.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7.      On September 7, 2022, Plaintiff filed her formal Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").

8.      On March 13, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue Letter ("Right-to-Sue Letter") which *inter alia* provided that Plaintiff had ninety (90) days to commence a civil action in federal court. *See* Exhibit 1.

9.      Plaintiff received notice of her Right-to-Sue Letter on March 14, 2022.

10.      Plaintiff has exhausted all of her administrative remedies and complied with all conditions precedent in maintaining this action, in that Plaintiff filed her formal Charge within 180 days of the last date of discrimination she suffered and received her Right-to-Sue Letter in regard to the same, and hereby initiates this action on June 11, 2023, which is within ninety (90) days of March 14, 2023—the date on which Plaintiff received notice of her Right-to-Sue Letter.

**STATEMENT OF FACTS**

**I.  BACKGROUND**

11.      In the fall of 2021, TriHealth informed Ms. Nadler that she was required to become vaccinated against COVID-19 as a condition of continued employment. TriHealth only made one exception to its newly instituted mandatory vaccination policy—Ms. Nadler could maintain her employment if she obtained an approved medical or religious accommodation; otherwise, she would be terminated.

12.      Ms. Nadler is a religious woman—specifically, she is a devout Christian. And, as mentioned above, Ms. Nadler is also disabled and a qualified person within the meaning intended by the ADA based on numerous qualifying disabilities (as mentioned above).

13.     Notably, TriHealth has granted Ms. Nadler's medical accommodation request concerning its mandatory vaccination policies, *twice*. TriHealth first reasonably accommodated Ms. Nadler due to her qualifying disabilities in 2021, and thereafter, again granted Ms. Nadler's medical accommodation in December of 2022—just one month after it placed her on unpaid leave and only a mere three (3) months prior to firing Ms. Nadler for "non-compliance" with the very policy to which TriHealth granted Ms. Nadler an accommodation, as evidenced below:



## II.  RELIGIOUS ACCOMMODATION REQUEST

14.     Due to the fact that TriHealth already had granted her a medical accommodation to its mandatory vaccination policies, Ms. Nadler was under the impression that, if the COVID-19

vaccine is truly a vaccine, her vaccination accommodation approval would logically extend to covering TriHealth's mandatory COVID-19 vaccination policy. Yet for reasons unknown, TriHealth required Ms. Nadler to request another accommodation, which was subject to TriHealth's approval.

15.     Being that Ms. Nadler's already-approved medical accommodation was clearly insufficient in the eyes of TriHealth, Ms. Nadler turned to her faith and submitted a religious accommodation request.

16.     In her request, she explained to TriHealth that she sincerely believes she cannot inject unknown vaccines into her body and highlighted the fact that the ingredients and chemicals contained in the COVID-19 vaccines were unknown, the effects of the vaccines were unknown, and these variables without more information, precluded her from blindly injecting a substance into her body. Ms. Nadler sincerely believes that her body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective manmade and necessary medical intervention. To consume or knowingly inject anything else into her body would constitute a sin and prevent her ability from one day, going to Heaven and sharing that Place with God.

17.     There is no question, nor does TriHealth contest, that it was placed on notice of Ms. Nadler's sincerely held religious beliefs.

18.     Likewise, TriHealth never once contested the fact that Ms. Nadler's asserted beliefs were and remain, religious in nature, nor does TriHealth challenge the fact that Ms. Nadler's religious beliefs were indeed, sincerely held.

19.     With this understanding, TriHealth also had notice that Ms. Nadler's sincerely held religious beliefs conflicted with TriHealth's mandatory COVID-19 vaccination policy and as a

result, Ms. Nadler was prohibited from becoming vaccinated and needed a reasonable accommodation for her sincerely held religious beliefs.

20.     From the date TriHealth was placed on notice that Ms. Nadler's sincerely held religious beliefs conflicted with its mandatory COVID-19 vaccination policy and as a result, Ms. Nadler was unable to comply, TriHealth never once alleged that reasonably accommodating Ms. Nadler would have imposed upon TriHealth an undue hardship.

21.     For months during the height of the pandemic, TriHealth declined to institute a mandatory COVID-19 vaccination policy. It was able to maintain and continue its operations safely by and through the implementation of alternative COVID-19 mitigation protocols, including without limitation, masking, social distancing, and weekly COVIC-19 testing. In doing so, TriHealth evidenced its ability to not only reasonably accommodate its employees, but also, TriHealth's ability to reasonably accommodate its employees without suffering an undue hardship.

22.     Yet despite being placed on notice of Ms. Nadler's sincerely held religious beliefs and the conflict between her beliefs and TriHealth's mandatory COVID-19 vaccination policy, TriHealth took adverse employment action against her.

23.     On or about November 1, 2021, TriHealth placed Ms. Nadler on unpaid administrative leave.

24.     According to TriHealth, it has unilateral authority to determine when—and when not—its employees are entitled to constitutional protections. Specifically, TriHealth admits to depriving Ms. Nadler of any meaningful consideration as to her religious accommodation request because she allegedly did not request an accommodation by the self-imposed arbitrary deadline TriHealth chose for itself. TriHealth's reasoning is meritless.

25.     As a preliminary matter, Ms. Nadler makes readily clear in her communications with TriHealth that she submitted her request after her religious beliefs developed to a point

whereas she felt compelled to request an accommodation and she did so immediately once her prayers were answered, and the Lord gave her direction to act in a specific manner.

26.      Secondly, and through TriHealth's own admissions, it is indisputable that TriHealth refused to even consider accommodating Ms. Nadler's sincerely held religious beliefs despite well-established law that requires TriHealth to engage in an interactive process once it receives an employees' accommodation request. *See Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018) ("Once an employee requests an accommodation, the employer has a duty to engage in an interactive process.") (emphasis added)). From that point, "both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (emphasis added).

27.      There is no justifiable basis or reason for which TriHealth violated Ms. Nadler's fundamental right to freely exercise her religion because TriHealth concedes granting Ms. Nadler an accommodation to its mandatory COVID-19 vaccination policy does not impose an undue hardship.

28.      Yet notwithstanding the fact that (1) Ms. Nadler's religious beliefs are religious, sincerely held, and conflict with TriHealth's mandatory COVID-19 vaccination policy; (2) TriHealth knew beliefs and the aforesaid conflict and at all times relevant, was placed on notice of the above; TriHealth made the decision to intentionally discriminate and retaliate against Ms. Nadler because of her sincerely held religious beliefs.

29.      Specifically, rather than accommodating Ms. Nadler, TriHealth placed her on unpaid administrative leave as of November 1, 2022 in direct violation of TriHealth's own policy as well as federal prohibitions against taking adverse employment action simply because an employee requests an accommodation and/or is a member of a protected class.

30. TriHealth advised Ms. Nadler that "exemptions will be considered and made for documented medical reasons or deeply held religious beliefs."

31. On or about December 2, 2021, while Ms. Nadler was on unpaid leave, TriHealth granted Ms. Nadler "an approved medical or religious exemption for the Covid-19 vaccine."

32. The assertion that Ms. Nadler allegedly "missed a deadline" is patently false. First, TriHealth granted Ms. Nadler an accommodation even though her request was submitted after this purported "deadline."

33. Secondly, this alleged "deadline" is inapplicable to the facts of this case. Specifically, the September 17, 2021 deadline to request a medical accommodation was limited in scope and only applied to requests "for any and all **<u>known</u>** medical conditions." (emphasis added).

### III. MEDICAL ACCOMMODATION REQUEST

34. On November 10, 2021 and while on unpaid administrative leave, Ms. Nadler was diagnosed with an additional disability that she had not known of previously. On that day, Plaintiff's treating physician diagnosed Ms. Nadler with an autoimmune disorder that she developed as sequalae to Lyme Disease.

35. Ms. Nadler's autoimmune disorder is a qualifying disability as intended by the ADA. Specifically, Ms. Nadler's autoimmune disorder is a physical or mental impairment that substantially limits one or more of her major life activities, including concentrating, learning, performing manual tasks, thinking, sleeping, breathing, learning, reading, concentrating, communicating, and working.

36. TriHealth, Inc. regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A).

37. By definition, Ms. Nadler could not have requested this disability accommodation by September 17, 2021 as she had not yet been diagnosed with her autoimmune disorder. And,

8

because of this, Ms. Nadler was not only entitled to submit her medical accommodation request; but also, TriHealth had a legal obligation to review it, consider it, and because no undue hardship exists, TriHealth was compelled to grant Ms. Nadler's request.

38.     Finally, on or about December 2, 2021, TriHealth advised Ms. Nadler that her accommodation request had been approved and she was not obligated to become vaccinated pursuant to its mandatory COVID-19 vaccination policy.

39.     While TriHealth acknowledges it granted Ms. Nadler's request for a reasonable accommodation due to her disability she learned of on November 10, 2021, TriHealth contends that the "reasonable" accommodation best suited for Ms. Nadler was to again, place her on unpaid administrative leave.

40.     Under the guise and false pretext of serving as "an accommodation", TriHealth placed Ms. Nadler back on unpaid leave on January 24, 2022, and her leave was not to end until April 10, 2022. But Ms. Nadler was terminated well before her accommodation was set to expire.

41.     Communications from TriHealth further acknowledge and re-confirm again that Ms. Nadler had obtained an approved accommodation to its mandatory COVID-19 vaccination policy, which is reflected in an e-mail exchange that occurred two days after TriHealth terminated Ms. Nadler's employment.

42.     Specifically, TriHealth acknowledges "Ms. Nadler had an approved exemption" that permitted Ms. Nadler to remain employed without becoming vaccinated—yet perplexingly, in that very same e-mail, TriHealth also states that Ms. Nadler was terminated for her "non-compliance" (i.e., failure to become vaccinated).

43.     Despite this, TriHealth continued to refuse to allow Ms. Nadler to work or earn a living because of her disability, and on March 15, 2021, TriHealth terminated Ms. Nadler's employment.

44.    Boiled down to its essence, TriHealth forced Plaintiff to obtain an accommodation: TriHealth first unlawfully rejected Ms. Nadler's religious accommodation request even though no undue hardship existed. Then, TriHealth granted Ms. Nadler another medical accommodation (even though Ms. Nadler already had a vaccination-related medical accommodation in place. Yet despite having this accommodation, TriHealth disregarded Ms. Nadler's accommodation and terminated her employment

45.    While on leave without pay, Ms. Nadler learned that her physical condidion had further deteriorated. Specifically, Ms. Nadler learned that she had developed even more disabilities than what she had at the time Ms. Nadler obtained her valid medial accommodation previously. As a result, Ms. Nadler informed TriHealth of her new qualifying disabilities and requested an accommodation to TriHealth's mandatory COVID-19 vaccine mandate.

46.    At all times relevant, Ms. Nadler satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Nadler demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that TriHealth permitted Ms. Nadler to work in the exact same capacity for months, including months during the height of the pandemic, and never once mandated that she be vaccinated against COVID-19.

47.    At all times relevant, Ms. Nadler complied with all COVID-19 mitigation protocols TriHealth implemented, including *inter alia* wearing masks, socially distancing, and testing for COVID-19 on a weekly basis (collectively, "mitigation protocols").

48.    The mitigation protocols, both individually and collectively, have evidenced-based track records demonstrating their effectiveness and the feasibility with which MHHS is able to implement and provide any or all of the mitigation protocols.

49.     Based upon TriHealth's provision of the aforesaid mitigation protocols and the continuation of such provision of the same for more than eight months, it is not subject to reasonable dispute that the aforesaid mitigation protocols do not impose upon TriHealth an undue hardship.

50.     Ms. Nadler has always been amenable, and Ms. Nadler remains amenable, to abiding by the aforesaid mitigation protocols, and TriHealth was aware of her amenability to the same at all times relevant.

51.     The reasonable religious accommodation Ms. Nadler sought would not impose an undue hardship upon TriHealth and does not impose an undue hardship upon TriHealth.

52.     Ms. Nadler sincerely holds religious beliefs, as explained more fully above.

53.     There is no dispute that TriHealth and Ms. Nadler are in agreement that the religious beliefs she asserted are in fact, religious.

54.     Ms. Nadler's religious beliefs are sincerely held.

55.     There is no dispute that TriHealth and Ms. Nadler are in agreement that her religious beliefs are in fact, sincerely held. TriHealth has never challenged the sincerity with which Ms. Nadler holds their beliefs.

56.     Ignoring and otherwise failing to respond to Ms. Nadler's request for a religious accommodation, treating Ms. Nadler differently, and/or taking adverse employment action against Ms. Nadler upon learning that she is a religious person constitutes religious-based discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

57.     Refusing to provide Ms. Nadler with a reasonable religious accommodation that does not impose an undue hardship despite Ms. Nadler's lawful entitlement to such an accommodation violates Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

58.     As a religious person, Ms. Nadler is a member of a constitutionally protected class (religion), and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

59.     Ignoring and otherwise failing to review or consider Ms. Nadler's request for a religious accommodation, as well as the refusal to reasonably accommodate Ms. Nadler's sincerely held religious beliefs while not ignoring and actually reviewing other TriHealth employees' requests for religious accommodations constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

60.     Refusing to provide Ms. Nadler with an accommodation on the basis of her religion, while providing reasonable accommodations to other persons similarly situated on the basis of their religion constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

61.     Ms. Nadler's beliefs are religious.

62.     Ms. Nadler's religious beliefs are sincerely held.

63.     TriHealth can reasonably accommodate Ms. Nadler's religious beliefs through *inter alia* masking, social distancing, and weekly testing.

64.     TriHealth has a demonstrated history of being able to accommodate religious persons regarding its mandatory vaccination policies.

65.     TriHealth has a demonstrated history of being able to accommodate religious persons during the COVID-19 pandemic.

66.     Accommodating Ms. Nadler through *inter alia* masking, social distancing, and/or weekly testing does not impose an undue hardship upon TriHealth.

67.     TriHealth was placed on notice that Ms. Nadler was a religious person and her beliefs conflicted with TriHealth's mandatory COVID-19 vaccination policy, and thereafter,

TriHealth placed Ms. Nadler on unpaid administrative leave and ultimately, terminated her employment.

68.     After refusing to accommodate Ms. Nadler's sincerely held religious beliefs, TriHealth took adverse employment action against her by placing Ms. Nadler on unpaid administrative leave that culminated in the termination of her employment.

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.***

69.     Ms. Nadler re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     Ms. Nadler sincerely holds religious beliefs and is a member of a protected class based on her religion.

71.     Ms. Nadler is an employee within the meaning of Title VII.

72.     TriHealth is an employer within the meaning of Title VII.

73.     Title VII forbids an employer from terminating an employee because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1).

74.     TriHealth has demonstrated no undue hardship existed, in that TriHealth has a proven history of being able to maintain operations without undue hardship, including times in which the COVID-19 pandemic was at an all-time high as opposed to the substantially lower threat the pandemic posed at the time Ms. Nadler placed TriHealth on notice of her sincerely held religious beliefs and the conflict between her beliefs and TriHealth's mandatory COVID-19 vaccination policy.

75.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious

observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

76.     Here, Ms. Nadler advised TriHealth (1) about her sincerely held religious beliefs; (2) that she sincerely believes she cannot inject unknown vaccines into her body; (3) highlighted the fact that the ingredients and chemicals contained in the COVID-19 vaccines were unknown; (4) the effects of the vaccines were unknown, and (5) these variables without more information, precluded her from blindly injecting a substance into her body.

77.     Ms. Nadler sincerely believes that her body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective manmade and necessary medical intervention. To consume or knowingly inject anything else into her body would constitute a sin and prevent her ability from one day, going to Heaven and sharing that Place with God.

78.     Ms. Nadler informed TriHealth of this conflict and expressly sought an accommodation.

79.     In response to Ms. Nadler's request for an accommodation, TriHealth took an adverse action against her by placing her on unpaid leave and thereafter, terminating her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "fail[ing] or refus[ing] to hire," "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

80.     TriHealth made no efforts at all to accommodate Ms. Nadler's sincerely held religious objection to its mandatory COVID-19 vaccination policy. Instead, TriHealth placed Ms. Nadler on unpaid leave and then terminated her employment.

81. Accommodating Ms. Nadler would not have imposed an undue hardship on TriHealth.

82. Specifically, TriHealth has not only accommodated religious employees when its employees' sincerely held religious beliefs conflict with TriHealth's mandatory vaccination policies.

83. TriHealth also had the opportunity to mandate vaccination against COVID-19 during the height of the pandemic, yet it declined to do so until the pandemic posed a drastically reduced risk of contracting and/or transmitting COVID-19.

84. Other medical facilities and health systems in Ohio and nationwide alike have not insisted on mandatory vaccination without allowing accommodations for objectors.

85. As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Ms. Nadler sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### COUNT II
### RELIGIOUS DISCRIMINATION
### Violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112, *et seq.*

86. Ms. Nadler re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87. Ms. Nadler sincerely holds religious beliefs and is a member of a protected class based on her religion.

88. Ms. Nadler is an employee within the meaning of OCRA.

89. TriHealth is an employer within the meaning of OCRA.

90.     OCRA forbids an employer from terminating an employee because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship.

91.     TriHealth has demonstrated no undue hardship existed, in that TriHealth has a proven history of being able to maintain operations without undue hardship, including times in which the COVID-19 pandemic was at an all-time high as opposed to the substantially lower threat the pandemic posed at the time Ms. Nadler placed TriHealth on notice of her sincerely held religious beliefs and the conflict between her beliefs and TriHealth's mandatory COVID-19 vaccination policy.

92.     Ms. Nadler informed TriHealth of this conflict and expressly sought an accommodation.

93.     In response to Ms. Nadler's request for an accommodation, TriHealth took an adverse action against her by placing her on unpaid leave and thereafter, terminating her employment.

94.     TriHealth made no efforts at all to accommodate Ms. Nadler's sincerely held religious objection to its mandatory COVID-19 vaccination policy. Instead, TriHealth placed Ms. Nadler on unpaid leave and then terminated her employment.

95.     Accommodating Ms. Nadler would not have imposed an undue hardship on TriHealth.

96.     Specifically, TriHealth has not only accommodated religious employees when its employees' sincerely held religious beliefs conflict with TriHealth's mandatory vaccination policies.

97.     TriHealth also had the opportunity to mandate vaccination against COVID-19 during the height of the pandemic, yet it declined to do so until the pandemic posed a drastically reduced risk of contracting and/or transmitting COVID-19.

98.     Other medical facilities and health systems in Ohio and nationwide alike have not insisted on mandatory vaccination without allowing accommodations for objectors.

99.     As a direct and proximate result of the aforesaid complained of conduct and violation of OCRA, Ms. Nadler sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT III
### DISABILITY DISCRIMINATION
### Violation of the ADA

100.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

101.    Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1). Plaintiff suffers from *inter alia* an autoimmune disorder, which is a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities, such as caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working. TriHealth also regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A) at all times relevant.

102.    Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8). Plaintiff, with or without a reasonable accommodation, can perform the essential functions of a clinical dietitian based factors including but not limited to, her education, experience, performance reviews, and TriHealth's approval of her accommodation request regarding the same disability.

103. Plaintiff, at all times relevant to this action, was an employee within the meaning of 42 U.S.C. § 12111(4).

104. TriHealth, at all times relevant to this action, was Plaintiff's employer within the meaning of 42 U.S.C. § 12111(5). TriHealth engaged in an industry affecting commerce and has more than 25 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

105. TriHealth had actual knowledge or constructive knowledge of Plaintiff's disabilities at all times relevant to this action, in that (1) TriHealth previously accommodated Plaintiff's disabilities; (2) TriHealth granted Ms. Nadler's medical accommodation request while she was on unpaid administrative leave; (3) TriHealth discussed Ms. Nadler's disabilities and her need for accommodation; examined, reviewed, or possessed medical evidence of Ms. Nadler's disabilities; and received Plaintiff's numerous requests for a disability accommodation.

106. Yet despite all of the above, TriHealth purposefully, willfully, intentionally, or recklessly refused to grant Ms. Nadler an accommodation that is "reasonable".

107. Withholding Ms. Nadler's pay after granting her an approved medical accommodation is not "reasonable" — there is no nexus or correlation between the electronic transfer of funds (i.e., direct deposit bi-weekly pay) and the contraction and transmission of COVID-19. Thus, to place Ms. Nadler on unpaid administrative leave as an "accommodation" fails to satisfy the "reasonableness" element as required by the ADA.

108. In addition to failing to accommodate Ms. Nadler in violation of the ADA, TriHealth also, purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

    a. Harassing and ridiculing Plaintiff because of her disability;

    b. Threatening Plaintiff;

18

c. Placing Plaintiff on unpaid leave;

d. Repeatedly pressuring Plaintiff into violating her sincerely held religious beliefs;

e. Repeatedly pressuring Plaintiff into engaging in risky behavior expressly prohibited by Plaintiff's treating physician;

f. Falsely reporting Plaintiff was being accommodated; and

g. Falsely reporting Plaintiff's accommodation was "reasonable" when it was anything but reasonable.

109. TriHealth purposefully, willfully, intentionally, or recklessly **retaliated** against Plaintiff by engaging in a series of adverse actions, including:

h. Harassing and ridiculing Plaintiff because of her disability;

i. Threatening Plaintiff;

j. Placing Plaintiff on unpaid leave;

k. Repeatedly pressuring Plaintiff into violating her sincerely held religious beliefs;

l. Repeatedly pressuring Plaintiff into engaging in risky behavior expressly prohibited by Plaintiff's treating physician;

m. Falsely reporting Plaintiff was being accommodated; and

n. Falsely reporting Plaintiff's accommodation was "reasonable" when it was anything but reasonable.

110. TriHealth committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

111. The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for her disability and by protesting TriHealth's unlawful refusal to accommodate her even though doing so would not impose upon TriHealth an undue hardship.

112. All allegations set forth herein violate the ADA.

113.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT IV
**DISABILITY DISCRIMINATION**
**Violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112, *et seq.***

114.    Ms. Nadler re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

115.    Plaintiff is a disabled person within the meaning of OCRA. Plaintiff suffers from *inter alia* an autoimmune disorder, which is a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities, such as caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working. TriHealth also regarded Plaintiff as having such an impairment as defined by OCRA at all times relevant.

116.    Plaintiff is a qualified individual within the meaning of OCRA Plaintiff, with or without a reasonable accommodation, can perform the essential functions of a clinical dietitian based factors including but not limited to, her education, experience, performance reviews, and TriHealth's approval of her accommodation request regarding the same disability.

117.    Plaintiff, at all times relevant to this action, was an employee within the meaning of OCRA.

118.    TriHealth, at all times relevant to this action, was Plaintiff's employer within the meaning of OCRA.

119.    TriHealth had actual knowledge or constructive knowledge of Plaintiff's disabilities at all times relevant to this action, in that (1) TriHealth previously accommodated

Plaintiff's disabilities; (2) TriHealth granted Ms. Nadler's medical accommodation request while she was on unpaid administrative leave; (3) TriHealth discussed Ms. Nadler's disabilities and her need for accommodation; examined, reviewed, or possessed medical evidence of Ms. Nadler's disabilities; and received Plaintiff's numerous requests for a disability accommodation.

120.    Yet despite all of the above, TriHealth purposefully, willfully, intentionally, or recklessly refused to grant Ms. Nadler an accommodation that is "reasonable".

121.    Withholding Ms. Nadler's pay after granting her an approved medical accommodation is not "reasonable" — there is no nexus or correlation between the electronic transfer of funds (i.e., direct deposit bi-weekly pay) and the contraction and transmission of COVID-19. Thus, to place Ms. Nadler on unpaid administrative leave as an "accommodation" fails to satisfy the "reasonableness" element as required by OCRA.

122.    In addition to failing to accommodate Ms. Nadler in violation of OCRA, TriHealth also, purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

    a.  Harassing and ridiculing Plaintiff because of her disability;

    b.  Threatening Plaintiff;

    c.  Placing Plaintiff on unpaid leave;

    d.  Repeatedly pressuring Plaintiff into violating her sincerely held religious beliefs;

    e.  Repeatedly pressuring Plaintiff into engaging in risky behavior expressly prohibited by Plaintiff's treating physician;

    f.  Falsely reporting Plaintiff was being accommodated; and

    g.  Falsely reporting Plaintiff's accommodation was "reasonable" when it was anything but reasonable.

    o.  TriHealth purposefully, willfully, intentionally, or recklessly **retaliated** against Plaintiff by engaging in a series of adverse actions, including:

h. Harassing and ridiculing Plaintiff because of her disability;

i. Threatening Plaintiff;

j. Placing Plaintiff on unpaid leave;

k. Repeatedly pressuring Plaintiff into violating her sincerely held religious beliefs;

l. Repeatedly pressuring Plaintiff into engaging in risky behavior expressly prohibited by Plaintiff's treating physician;

m. Falsely reporting Plaintiff was being accommodated; and

n. Falsely reporting Plaintiff's accommodation was "reasonable" when it was anything but reasonable.

123. TriHealth committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

124. The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for her disability and by protesting TriHealth's unlawful refusal to accommodate her even though doing so would not impose upon TriHealth an undue hardship.

125. All allegations set forth herein violate OCRA.

126. As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Nadler respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Ms. Nadler whole and remedy the aforesaid violations of Texas and federal law, and hold TriHealth, Inc. liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

(a) Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII and OCRA.

(b) Enjoin TriHealth from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

(c) Require TriHealth to adopt hiring and employment policies that comply with Title VII and OCRA, including their requirement that employers make reasonable accommodations to religious beliefs and practices in general and faith-based objections to loyalty oaths in particular and any other appropriate and legally permissible injunctive relief in accordance with proof;

(d) Award Ms. Nadler all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial to make her whole for the loss she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Ms. Nadler any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(f) Award compensatory damages to Ms. Nadler to fully compensate her for the pain, suffering, childcare, and other expenses caused by the harmful conduct alleged in this Complaint;

(g) Award Ms. Nadler a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Ms. Nadler all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

## <u>DEMAND FOR JURY TRIAL</u>

Ms. Nadler demands a trial by jury on all issues and questions of fact so triable.

Dated: June 11, 2023

Respectfully submitted,
KEMP, SCHAEFFER & ROWE CO., LPA


By: /s/ ERICA ANN PROBST
Erica Ann Probst (0073486)
88 W. Mound Street
Columbus, Ohio 43215
Tel: (614) 224-2678
Fax: (614) 469-7170
erica@ksrlegal.com


By: /s/ MICHAEL A. YODER
Michael A. Yoder* [DC Bar No. 1600519]
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 2201
Tel: (202) 595-4504
Fax: (571) 327-5554
michael@yoderesq.com
*pro hac vice forthcoming

*Counsel for Plaintiff*