**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| KRISTINE NADLER, | : | Case No. 1:23-cv-358 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| TRIHEALTH, INC., et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER AND OPINION

---

This case is about two dilemmas, set in motion by pandemic-era policies, that remain a reality for employees in the workplace. First, as here, an employee must choose whether to abandon the precepts of her faith to remain employed, or to stay true to her religion but lose the job she loves. This dilemma not only implicates the employee's religious convictions and the employer's perspective—but also Title VII. *See Bilyeu v. UT-Battelle, LLC,* 154 F.4th 396, 404 (6th Cir. 2025) (noting that "an employer fails to accommodate an employee under Title VII when it forces someone to abandon [her] religious beliefs to comply with 'otherwise-neutral policies'"). Second, at other times, an employee must choose between following the medical advice of her physician and losing her job, or going against that medical advice and keeping her job. This dilemma, also present here, not only involves the physician-patient relationship, the medical needs of the employee, and the employer's interests—but may also implicate the Americans with Disabilities Act ("ADA"). *See Tchankpa v. Ascena Retail Grp., Inc.,* 951 F.3d 805, 811–13 (6th

Cir. 2020) (observing that the ADA involves, among other things, the employer's obligation to grant reasonable accommodations to a disabled employee and the employee's obligation to show that the accommodation is medically necessary when asked by her employer).

This matter is before the Court on Defendants TriHealth, Inc. and TriHealth G, LLC's Motion for Summary Judgment (Doc. 27). Plaintiff Kristine Nadler filed a Response in Opposition (Doc. 29), and Defendants filed a Reply in Support (Doc. 31). This matter is therefore ripe for the Court's review. For the following reasons, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Defendants TriHealth, Inc. and TriHealth G, LLC (collectively, "TriHealth") operate five hospitals and over 140 health service locations in the Greater Cincinnati region, employing nearly 15,000 people. (Beckett Decl., Doc. 27-3, ¶ 3.) Plaintiff Kristine Nadler worked as a clinical dietitian at TriHealth, beginning on January 21, 2021. (Nadler Dep., Doc. 24, Pg. ID 269–70.) During her time at TriHealth, Nadler worked with patients in surgical and nonsurgical weight management programs. (*Id.* at Pg. ID 270.) TriHealth asserts that many of Nadler's patients were immunocompromised and vulnerable to infection. (Beckett Decl., Doc. 27-3, ¶ 5.)

In the fall of 2021, the presidential administration at the time mandated that all hospitals and health care systems, as well as other facilities receiving Medicare and Medicaid reimbursements, implement employer-based COVID-19 vaccine requirements. (Beckett Decl., Doc. 27-3, ¶ 7; Blatt Dep., Doc. 25, Pg. ID 500–02.) TriHealth complied with

this mandate and required all its employees to receive a COVID-19 vaccine by October 31, 2021, unless they received medical or religious exemptions. (9/1/2021 Clement Email, Doc. 29-2, Pg. ID 807; Beckett Decl., Doc. 27-3, ¶¶ 7–8; Nadler Dep., Doc. 24, Pg. ID 282.) TriHealth imposed a deadline of September 17, 2021, for employees to submit religious and medical exemption requests. (Beckett Decl., Doc. 27-3, ¶ 8; Nadler Dep., Doc. 24, Pg. ID 282.) And, TriHealth required employees who received an exemption from the vaccination requirement to undergo weekly testing for COVID-19. (Nadler Dep., Doc. 24, Pg. ID 282; VanTassel Dep., Doc. 22, Pg. ID 168.) TriHealth thus implemented the deadline to submit exemption requests "due to the extensive financial and personnel resources needed to track unvaccinated individuals' COVID-19 testing and the administrative confusion caused by late exemption requests." (Beckett Decl., Doc. 27-3. ¶ 10.) TriHealth was also "concerned that if it granted some late exemption requests, it would need to review all of them to ensure fairness in the exemption process and prevent legal challenges to the process." (*Id.*)

TriHealth received 645 exemption requests before the deadline—of these requests, 618 were granted. (Beckett Decl., Doc. 27-3. ¶ 11.) TriHealth also received 111 exemption requests after the deadline. (*Id.*) One of these late requests was from Nadler. (Nadler Dep., Doc. 24, Pg. ID 284–85.) All requests received after the deadline, including Nadler's, were denied as untimely. (Beckett Decl., Doc. 27-3. ¶ 11; Coyle Dep., Doc. 21, Pg. ID 134–35; Schafer Dep., Doc. 23, Pg. ID 195.) However, in October 2021, Nadler requested a religious exemption to TriHealth's influenza vaccine requirement—TriHealth granted this request in November 2021. (Flu Vaccine Religious Exemption Request, Doc. 24-2, Pg. ID 393–94;

3

Flu Vaccine Exemption Approval, Doc. 24-2, Pg. ID 395.) And, while TriHealth required non-exempted employees to vaccinate by October 31, 2021, it granted extensions to employees who did not vaccinate by that deadline for a variety of non-religious reasons. (TriHealth Vaccine Compliance Spreadsheet, Doc. 29-2, Pg. ID 831; Blatt Dep., Doc. 25, Pg. ID 500–03, 521–22.)

In Nadler's religious exemption request pertaining to the COVID-19 vaccination requirement, which she submitted on October 25, 2021, she acknowledged that her request was late. (Nadler Dep., Doc. 24, Pg. ID 285; COVID-19 Vaccine Religious Exemption Request, Doc. 24-2, Pg. ID 396–98.) Nonetheless, Nadler moved forward with her late exemption request, noting that she made her decision after months of prayer and reflection, and explaining that receiving a COVID-19 vaccination would violate her Christian faith. (COVID-19 Vaccine Religious Exemption Request, Doc. 24-2, Pg. ID 396–98.) TriHealth denied Nadler's request on the same day it was submitted and informed her that she was required to comply with the COVID-19 vaccine requirement by October 31, 2021. (COVID-19 Vaccine Religious Exemption Denial, Doc. 24-2, Pg. ID 400.)

Another employee in Nadler's department, who apparently submitted a religious exemption request prior to TriHealth's deadline, was granted an exemption. (Nadler Dep., Doc. 24, Pg. ID 334–36; VanTassel Dep., Doc. 22, Pg. ID 166–67.) After granting that employee an exemption, TriHealth did not modify her job duties other than requiring her to submit COVID-19 test results. (VanTassel Dep., Doc. 22, Pg. ID 168.) Otherwise, that employee went about her job duties as normal. (*Id.* at Pg. ID 169.) And, according to

Nadler, that employee had more direct contact with patients than Nadler. (Nadler Dep., Doc. 24, Pg. ID 336.)

On October 27, 2021, Nadler emailed TriHealth President and CEO Mark Clement, appealing the denial of her religious exemption request and asking for reconsideration. (10/27/21 Nadler Email, Doc. 24-2, Pg. ID 401–02.) Later that day, Clement emailed Nadler back, denying her request for reconsideration and telling Nadler that "[w]e need you.... please get vaccinated." (10/27/21 Clement Email, Doc. 24-2, Pg. ID 402.) However, Nadler did not comply with TriHealth's COVID-19 vaccine requirement. (Nadler Dep., Doc. 24, Pg. ID 287.) As a result, Nadler was placed on administrative leave, beginning on November 1, 2021. (*Id.*)

After TriHealth placed her on administrative leave, Nadler submitted a medical exemption request pertaining to the COVID-19 vaccination requirement on November 17, 2021. (Nadler Dep., Doc. 24, Pg. ID 288; COVID-19 Vaccine Medical Exemption Request, Doc. 24-2, Pg. ID 403–05.) Nadler's physician, Dr. Theodore Cole, noted in the medical exemption request that a COVID-19 vaccination was contraindicated, or medically inappropriate, for Nadler because she suffered from immune system disorders, allergic reactions, anemia with fatigue, and shortness of breath. (COVID-19 Vaccine Medical Exemption Request, Doc. 24-2, Pg. ID 403.) TriHealth denied Nadler's medical exemption request on November 24, 2021, noting that she did not submit sufficient medical information and requesting additional background about her immune system disorders. (Nadler Dep., Doc. 24, Pg. ID 292; COVID-19 Vaccine Medical Exemption Denial, Doc. 24-2, Pg. ID 406.) Nadler provided further information to TriHealth by

specifying her diagnoses, sharing the treatment plan ordered by Dr. Cole, and noting that she had recently tested positive for COVID-19. (Nadler Dep., Doc. 24, Pg. ID 293; 11/30/2021 Nadler Email, Doc. 24-2, Pg. ID 405; Nadler Treatment Plan, Doc. 24-2, Pg. ID 407.)

In general, TriHealth reviewed medical exemption requests by comparing the medical conditions described by the requesting employee to the COVID-19 vaccine contraindications listed by the manufacturers of the vaccine and the Centers for Disease Control and Prevention ("CDC"). (Blatt Dep., Doc. 25, Pg. ID 521.) TriHealth asserts that it denied only those requests for which a contraindication was not listed. (Motion for Summary Judgment, Doc. 27, Pg. ID 557 (citing Blatt Dep., Doc. 25, Pg. ID 502–03).) However, TriHealth did grant medical exemption requests for conditions that were not listed as contraindications by the CDC, including Guillain-Barré Syndrome and pregnancy. (Blatt Dep., Doc. 25, Pg. ID 516–17, 521–22.)

Because the conditions specified by Nadler were not listed as contraindications by the CDC and vaccine manufacturers, TriHealth again denied her medical exemption request through its internal review process, but it did not immediately notify Nadler of this decision. (Nadler Dep., Doc. 24, Pg. ID 294–96; Blatt Dep., Doc. 25, Pg. ID 519–21.) Instead, on December 2, 2021, TriHealth sent Nadler two conflicting emails — one stating that she was granted an exemption, and another stating that she was denied an exemption but granted a 90-day deferral. (Nadler Dep., Doc. 24, Pg. ID 294–96; TriHealth Exemption Approval Email, Doc. 24-2, Pg. ID 409; TriHealth Exemption Denial and Deferral Email, Doc. 24-2. Pg. ID 411–13.) Given this discrepancy, Nadler requested

6

clarification on December 6, 2021, and TriHealth informed her the next day that she would still be required to vaccinate but that this requirement would be deferred by 90 days due to her positive COVID-19 test. (Nadler Dep., Doc. 24, Pg. ID 297; 12/6/21 Nadler Email, Doc. 24-2, Pg. ID 412; 12/7/21 TriHealth Email, Doc. 24-2, Pg. ID 412.)

In January 2022, Nadler reached out to Terri Hanlon-Bremer, who was at that time the Senior Vice President of Employer Solutions and Population Health at TriHealth, and who also served as the primary point of contact for TriHealth's COVID-19 medical exemptions. (Nadler Dep., Doc. 24, Pg. ID 299; 01/19/22 Nadler Email, Doc. 24-2, Pg. ID 416; Beckett Decl., Doc. 27-3, ¶ 12.) Nadler requested additional information about her 90-day deferral, and she reiterated her confusion about TriHealth's inconsistent and unclear communications regarding her exemption status. (Nadler Dep., Doc. 24, Pg. ID 299; 01/19/22 Nadler Email, Doc. 24-2, Pg. ID 416.) Hanlon-Bremer responded by providing further details about TriHealth's internal review of Nadler's request, informing her that it was indeed denied, and noting that she was required to vaccinate by February 1, 2022. (Nadler Dep., Doc. 24, Pg. ID 299–301; 01/20/22 Hanlon-Bremer Email, Doc. 24-2, Pg. ID 415–16.) Hanlon-Bremer also indicated that TriHealth would accept and review additional documentation from Nadler's physician pertaining to her medical exemption request. (Nadler Dep., Doc. 24, Pg. ID 301; 01/20/22 Hanlon-Bremer Email, Doc. 24-2, Pg. ID 415–16.) Nadler subsequently requested an extension of her deferment to February 15, 2022, and TriHealth granted her request. (Nadler Dep., Doc. 24, Pg. ID 304.)

7

On February 2, 2022, Nadler submitted to TriHealth additional information from her physician regarding her medical exemption request. (Nadler Dep., Doc. 24, Pg. ID 301; Cole Letter, Doc. 24-2, Pg. ID 421.) Specifically, Nadler's submission included a letter from her physician detailing additional ailments with which she was diagnosed, outlining her treatment plan, and recommending that she not receive a COVID-19 vaccine due to the potential for "immune system disruption" and "negative side effects." (Cole Letter, Doc. 24-2, Pg. ID 421.) TriHealth reviewed Nadler's additional information and concluded that there was "no scientific connection between" her medical exemption request and the contraindications outlined by her physician. (02/08/2022 TriHealth Email, Doc. 24-2, Pg. ID 422.) Thus, TriHealth again decided that Nadler was ineligible for a medical exemption and sent her its decision on February 8, 2022, noting that she was required to receive a COVID-19 vaccine by February 15, 2022. (*Id.*)

In accordance with her faith and the advice of her physician, Nadler did not receive a COVID-19 vaccine by February 15, 2022. (Nadler Dep., Doc. 24, Pg. ID 304.) On February 17 or 18 of 2022, TriHealth placed Nadler on a second administrative leave because of her unvaccinated status. (*Id.*; TriHealth Leave Notice, Doc. 24-3, Pg. ID 424.) And, on March 21, 2022, TriHealth sent Nadler a letter informing her that because she did not comply with the COVID-19 vaccination requirement, it considered her to have voluntarily resigned, effective March 15, 2022. (TriHealth Voluntary Resignation Letter, Doc. 24-3, Pg. ID 425.)

On June 11, 2023, Nadler filed this action, bringing claims against TriHealth for religious and disability discrimination under both Ohio and federal law. (Compl., Doc.

8

1.) Nadler filed an Amended Complaint (Doc. 2) on June 12, 2023. TriHealth filed its Answer (Doc. 12) to Nadler's Amended Complaint on July 14, 2023. And, on March 13, 2025, TriHealth filed its Motion for Summary Judgment (Doc. 27). Nadler filed a Response in Opposition (Doc. 29) to TriHealth's Motion for Summary Judgment on April 24, 2025, and TriHealth filed a Reply in Support (Doc. 31) on May 8, 2025.

## LAW

A court grants summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden to establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

9

## ANALYSIS

Nadler brings claims against TriHealth for religious and disability discrimination arising under Title VII, the ADA, and Ohio law. The Court will address each of Nadler's claims, beginning with her religious discrimination claims.

### I.      Religious Discrimination Claims

As this Court observed in *Doster v. Kendall*, "[f]rom the time our Founding Fathers signed the Declaration of Independence and, later, the United States Constitution, United States citizens have been provided with the freedom to practice their religious beliefs as they deem fit." *Doster v. Kendall*, 596 F. Supp. 3d 995, 1003 (S.D. Ohio 2022), *vacated as moot*, No. 1:22-CV-84, 2024 U.S. Dist. LEXIS 239647 (S.D. Ohio Jan. 18, 2024). This Court also noted in *Doster* that Congress has enacted laws that provide broad protection for religious liberty, going beyond what the Supreme Court has found the Constitution to require. *See id.* at 1014 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014)) (discussing the Religious Freedom Restoration Act as a statutory protection for religious liberty). Relevant here is Title VII, which Congress enacted to make it unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *TWA v. Hardison*, 432 U.S. 63, 74 (1977). Nadler brings claims for religious discrimination under both Title VII and Ohio law — because these claims employ the same analysis, the Court analyzes them both through the lens of Title VII. *Savel v. Metrohealth Sys.*, No. 24-4025, 2025 U.S. App. LEXIS 16506, at *4 (6th Cir. July 2, 2025).

At the summary judgment stage, courts apply a two-step analysis in examining religious discrimination claims under Title VII. First, the employee must establish a prima facie case of religious discrimination. *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 845 (6th Cir. 2024). To do so, the employee must demonstrate that "(1) [she] has a sincere religious belief that conflicts with an employment requirement; (2) the employer was on notice about the conflicts; and (3) the employee was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* (cleaned up). Second, the burden shifts to the employer to establish that "accommodating the employee's religion would impose an undue hardship." *Id.* The employer does so by demonstrating that an accommodation would impose a burden that is "substantial in the context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 471 (2023). The Supreme Court in *Groff* emphasized that "[w]hat is most important is that 'undue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test." *Id.* at 451.

TriHealth first concludes without any argument that Nadler cannot establish a prima facie case of religious discrimination. (Motion for Summary Judgment, Doc. 27, Pg. ID 563.) The undisputed facts on the record, as outlined above, demonstrate that (1) Nadler held a sincere religious belief that conflicted with TriHealth's COVID-19 vaccination requirement, (2) Nadler informed TriHealth of this conflict, and (3) Nadler was considered to have voluntarily resigned from TriHealth due to her non-compliance with the vaccination requirement. Accordingly, the Court finds that Nadler has

11

established a prima facie case of religious discrimination. TriHealth next asserts that accommodating Nadler's religious exemption request pertaining to the COVID-19 vaccine would impose an undue hardship because she submitted her request after the TriHealth-imposed deadline. (Motion for Summary Judgment, Doc. 27, Pg. ID 563.) TriHealth also argues that granting Nadler a religious exemption would impose an undue hardship because she worked with immunocompromised patients. (*Id.* at Pg. ID 564.) The Court addresses TriHealth's arguments in turn.

## A. Submission of Religious Exemption Request After TriHealth's Deadline

TriHealth argues that granting Nadler's request for a religious exemption from the COVID-19 vaccination requirement would impose an undue hardship because Nadler missed the TriHealth-imposed deadline in submitting her request. (Motion for Summary Judgment, Doc. 27, Pg. ID 563.) In support, TriHealth notes that it denied every untimely request for religious exemption that it received and that it did not make an exception for Nadler because of the extensive resources needed to track COVID-19 test results for employees who received exemptions. (*Id.*) TriHealth also contends that granting untimely requests would effectively prohibit it from "setting enforceable deadlines to facilitate compliance with a federal mandate that is out of its control." (Reply, Doc. 31, Pg. ID 846.) And, in its Reply, TriHealth cites two out-of-circuit cases in support of its argument that granting untimely exemption requests would impose an undue hardship. (*Id.* (citing *Brunsman v. Franciscan All., Inc.*, No. 1:23-CV-1012, 2025 U.S. Dist. LEXIS 16585 (S.D. Ind. Jan. 29, 2025); *Walter v. Eugene Sch. Dist. 4J*, No. 6:23-CV-688, 2024 U.S. Dist. LEXIS 58938 (D. Or. Mar. 31, 2024)).)

12

As Nadler points out, TriHealth's argument here falls flat for two reasons. (Response, Doc. 29, Pg. ID 715–17.) First, the Court would ask the same question posed by another district court: "What is a deadline for accommodation requests if not an effort to avoid accommodations?" *Hampton-Davis v. Froedtert Health, Inc.*, No. 22-CV-1437, 2024 U.S. Dist. LEXIS 123749, at *20 (E.D. Wis. July 15, 2024). An employer cannot "avoid accommodating a religious practice that it could accommodate without undue hardship," even if the employee's request for accommodation was submitted after a neutral, employer-imposed deadline. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 770 (2015). TriHealth does not point to, and the Court is unaware of, any authority finding that a request for accommodation submitted after an employer-imposed deadline constitutes a per se imposition of undue hardship. Thus, the onus is on TriHealth to show that it would face undue hardship, a burden substantial in the context of its business, if it granted Nadler's untimely religious exemption request.

As Nadler notes, the record in this matter demonstrates that, when TriHealth employees were granted a religious exemption from the COVID-19 vaccine, they were required to submit COVID-19 test results every week—this was the responsibility of employees, not TriHealth. (*See* Response, Doc. 29, Pg. ID 716; Nadler Dep., Doc. 24, Pg. ID 282; VanTassel Dep., Doc. 22, Pg. ID 168.) Thus, from what the Court can gather, TriHealth's responsibilities in the exemption process included (1) receiving, tracking, and making decisions about the requests, and (2) receiving COVID-19 testing information from employees who were granted exemptions. As demonstrated by Nadler's experience, TriHealth received, tracked, and responded to requests regardless of their

13

timeliness, so the only additional tasks TriHealth would have in granting untimely requests would be providing decisions on the merits of each request and receiving additional COVID-19 tests on a weekly basis. While it could be argued that a review of each untimely request on the merits, as opposed to summarily denying each request as untimely, could create undue hardship, a jury could reasonably find that it would not. And, in Nadler's specific situation, TriHealth had already tracked her COVID-19 test results, as evidenced by its decision to grant her several deferrals on the basis of positive COVID-19 tests. (12/2/21 TriHealth Email, Doc. 24-2, Pg. ID 411; 12/6/21 Nadler Emails, Doc. 24-2, Pg. ID 411–12; 12/6/21 TriHealth Emails, Doc. 24-2, Pg. ID 411–12; 12/7/21 TriHealth Email, Doc. 24-2, Pg. ID 412.)

Aside from its conclusory assertions that the exemption process required extensive resources and that administrative confusion would arise if untimely exemption requests were granted, TriHealth fails to specifically detail why granting Nadler's untimely request would impose an undue hardship that is substantial in the context of its business. (*See* Motion for Summary Judgment, Doc. 27, Pg. ID 563–64; Reply, Doc. 31, Pg. ID 845–47.) Any significant hardship imposed by granting Nadler's religious exemption request would be on Nadler—employees alone were responsible for obtaining and submitting test results, while TriHealth merely received the results. Thus, based on the record here, a jury could reasonably find that granting Nadler's religious exemption request would not impose an undue hardship on TriHealth based on its purported administrative reasons.

TriHealth's argument that granting untimely religious exemption requests would impose an undue hardship also fails for a second reason—as Nadler notes, TriHealth was inconsistent in its enforcement of the deadlines it imposed. (*See* Response, Doc. 29, Pg. ID 716–17.) TriHealth concedes that Nadler's religious accommodation was denied "exclusively due to untimeliness." (Motion for Summary Judgment, Doc. 27, Pg. ID 558.) TriHealth's deadline for religious exemption requests was September 17, 2021, and its deadline for non-exempted employees to be vaccinated was October 31, 2021. (9/1/2021 Clement Email, Doc. 29-2, Pg. ID 807; Beckett Decl., Doc. 27-3, ¶¶ 7–8; Nadler Dep., Doc. 24, Pg. ID 282.)

The Court observes that while TriHealth was stringent in its refusal to grant religious exemption requests submitted after its September deadline, TriHealth did allow employees that missed the October deadline to vaccinate and keep their job for a variety of non-religious reasons. (TriHealth Vaccine Compliance Spreadsheet, Doc. 29-2, Pg. ID 831; Blatt Dep., Doc. 25, Pg. ID 500–03, 521–22.) This disparity suggests that TriHealth weighed the administrative inconvenience caused by untimely religious exemption requests differently than it weighed the hardship caused by non-religious requests for untimely compliance. Therefore, "a reasonable jury could find that [TriHealth] was treating individuals differently" if they requested a non-religious exemption versus a religious exemption, and "the jury may find that the staggered dates themselves were unfairly targeting those with religious beliefs." *EEOC v. Mission Hosp., Inc.*, No. 1:16-CV-118, 2017 U.S. Dist. LEXIS 124183, at *9 (W.D.N.C. Aug. 7, 2017) (noting that "there was a 'grace period' for those employees who did not meet the [vaccination] deadline, but no

'grace period' for those that fail to meet the exemption . . . deadline"). Thus, TriHealth is not entitled to summary judgement based on its contention that Nadler's request would impose an undue hardship due to its untimeliness.

### B. Work with Immunocompromised Patients

TriHealth next argues that granting Nadler's request for a religious exemption from the COVID-19 vaccination requirement would impose an undue hardship because Nadler worked in close proximity with immunocompromised patients. (Motion for Summary Judgment, Doc. 27, Pg. ID 564–66.) As discussed above, TriHealth concedes that Nadler's religious accommodation request was denied "exclusively due to untimeliness." (*Id.* at Pg. ID 558.) As an initial matter, the Court takes issue with the fact that TriHealth brings this additional basis for its denial of Nadler's request for the first time in its Motion for Summary Judgment—at no point prior to this litigation did TriHealth assert that Nadler's proximity to immunocompromised patients was a rationale behind its denial of her exemption request.

The Sixth Circuit has not explicitly recognized an affirmative duty on the part of an employer to engage in any "interactive process" to negotiate with an employee making a religious accommodation request. *Kizer v. St. Jude Child.'s Rsch. Hosp.*, No. 24-5207, 2024 U.S. App. LEXIS 29429, at *12 (6th Cir. Nov. 18, 2024). However, in a case where an employer made no effort to act on an accommodation request, the Sixth Circuit found that the employer failed to produce sufficient evidence to meet its burden of showing that the plaintiff's proposed accommodation would impose an undue hardship. *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("After failing to pursue this

16

or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably his religious needs without undue hardship on the conduct of its business."). And, other circuits have recognized that, when faced with a request for religious accommodation, an "employer [is] required to negotiate with [its] employee in an effort reasonably to accommodate the employee's religious beliefs." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989) (citing *Hardison*, 432 U.S. at 75); *see also Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (noting that the statutory basis for Title VII religious discrimination/failure to accommodate claims, "like the statutory and regulatory framework of the Americans with Disabilities Act (ADA), involves an interactive process that requires participation by both the employer and the employee."); *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir. 1978) ("The burden was upon the [employer], not [the employee], to undertake initial steps toward accommodation. [The employer] cannot excuse [its] failure to accommodate by pointing to deficiencies, if any there were, in [the employee's] suggested accommodation."); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978) (finding that "a 'mutuality of obligation' is inherent in [religious] accommodation, for rarely will an accommodation be successful without mutual efforts and cooperation"). Accordingly, the Court finds that Nadler was entitled to such an interactive process.

Inherent in any reasonable interactive process or negotiation as to a religious accommodation request is transparency on the part of the employer regarding the reasons it believes the employee's proposed accommodation would impose an undue hardship. Indeed, how is an employee to engage in negotiation and entertain any

17

potential compromise if she does not know why her employer is unwilling to accommodate? *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005) ("An employer cannot sit behind a closed door and reject the employee's requests for accommodation without explaining why the requests have been rejected or offering alternatives."). Additionally, in other areas of employment law, including comparable areas of Title VII, courts often view shifting rationales for an adverse employment action with suspicion. *See, e.g., Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (noting in the context of an age discrimination claim that "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext," and that "[s]hifting justifications over time calls the credibility of those justifications into question"); *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 512 (6th Cir. 2021) (noting in the context of an Equal Pay Act claim that "[i]llusory, post-event justification[s] for unequal pay for equal work are not valid factors on which a wage differential may be based"); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 541 (6th Cir. 2014) (observing in the context of an age discrimination claim that "[a]lthough it is possible . . . that both reasons played a role in [the employee's] discharge, a reasonable jury could conclude that [the employer] shifted the reasons for his decision over time. Such shifting justifications raise an inference that the proffered reasons are false and are pretext for discrimination.").

A disputed issue of fact exists on the question of undue hardship in this case because a reasonable jury could question TriHealth's good faith in engaging in the required interactive process. TriHealth did not explain that Nadler's proximity to immunocompromised patients was a rationale behind its denial of her exemption

18

request. And, even if an interactive process were not required, a jury could reasonably find that this basis for denying Nadler's request lacks credibility because TriHealth never informed Nadler of this rationale prior to this litigation. Accordingly, TriHealth's request for summary judgment as to Nadler's religious discrimination claims is denied for these reasons alone. In any event, the Court will consider TriHealth's argument as to this freshly raised basis for denying Nadler's exemption request.

As TriHealth points out, the Sixth Circuit and several district courts within it have found that, under varying circumstances, allowing unvaccinated healthcare workers to work in close proximity with vulnerable patients constitutes an undue hardship. (Motion for Summary Judgment, Doc. 27, Pg. ID 564–66 (citing *Kizer*, 2024 U.S. App. LEXIS 29429, at \*16; *Savel v. Metrohealth Sys.*, No. 1:22-CV-2154, 2024 U.S. Dist. LEXIS 193993, at \*32 (N.D. Ohio Oct. 25, 2024); *Wise v. Child.'s Hosp. Med. Ctr. of Akron*, No. 5:22-CV-2092, 2024 U.S. Dist. LEXIS 119686, at \*6 (N.D. Ohio July 9, 2024); *Devore v. Univ. of Ky. Bd. of Trs.*, 693 F. Supp. 3d 757, 759 (E.D. Ky. 2023), *affirmed* 118 F.4th 839 (6th Cir. 2024)).) However, TriHealth does not cite, and the Court is unaware of, any authority standing for the proposition that an unvaccinated healthcare worker's interaction with vulnerable patients constitutes a per se imposition of undue hardship in all contexts. Instead, in assessing undue hardship, "a court must take into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Savel*, 2024 U.S. Dist. LEXIS 193993, at \*32 (citing *Groff*, 600 U.S. at 470–71) (cleaned up). Accordingly, the Court weighs the relevant facts specific to this case.

The record demonstrates that Nadler worked with patients in surgical and nonsurgical weight management programs. (Nadler Dep., Doc. 24, Pg. ID 270.) TriHealth asserts that many of Nadler's patients were immunocompromised and vulnerable to infections, including COVID-19 infection. (Beckett Decl., Doc. 27-3, ¶ 5.) However, another employee in Nadler's department was granted a religious exemption and permitted to go about her job as normal, other than being required to submit COVID-19 tests. (Nadler Dep., Doc. 24, Pg. ID 334–36; VanTassel Dep., Doc. 22, Pg. ID 166–69.) And, according to Nadler, that employee had more direct patient contact than Nadler did as a dietician—TriHealth disputes this contention, but the Court must view the evidence in the light most favorable to Nadler. (Nadler Dep., Doc. 24, Pg. ID 336; Reply, Doc. 31, Pg. ID 848–49.)

A jury could reasonably find that the disparate treatment of Nadler in relation to this comparator suggests that TriHealth would not have faced an undue hardship in granting Nadler's religious exemption request. *See, e.g., Dalloo v. MotorCity Casino*, No. 2:22-CV-12650, 2025 U.S. Dist. LEXIS 143933, at *60 (E.D. Mich. July 28, 2025) ("[C]ourts have found the treatment of other employees who either have been accommodated for or excluded from an employment policy can be relevant to the undue hardship analysis."); *Cox v. Gray Media Grp., Inc.*, No. 5:22-CV-290, 2024 U.S. Dist. LEXIS 59387, at *13 (E.D. Ky. Apr. 1, 2024) ("Although an undue hardship analysis does not involve the use of comparators, whether [the employer] accommodated employees with similar job duties is probative to whether [plaintiffs'] requested accommodations imposed an undue burden on [the employer]."); *Barton v. Metro. Gov't of Nashville*, No. 3:20-CV-118, 2022 U.S.

Dist. LEXIS 59863, at *8 (M.D. Tenn. Mar. 31, 2022) (considering other employees' time off during relevant period when assessing whether plaintiff's requested religious accommodation for time off was an undue hardship). Indeed, this fact suggests that TriHealth did not foresee undue hardship in the case of this comparator who may have posed an even greater risk to patients than Nadler.

Further, TriHealth granted Nadler's request for religious exemption from the influenza vaccine in November 2021. (Flu Vaccine Religious Exemption Request, Doc. 24-2, Pg. ID 393–94; Flu Vaccine Exemption Approval, Doc. 24-2, Pg. ID 395.) The Court declines to assume the role of a medical professional in determining whether the risk to vulnerable patients posed by employees not vaccinated against influenza is comparable to the risk posed by employees not vaccinated against COVID-19. In any event, TriHealth does not cite any record evidence as to whether the risk to vulnerable patients posed by employees not vaccinated against influenza is comparable to the risk posed by employees not vaccinated against COVID-19. And, the Court observes the logical dissonance between TriHealth's denial of Nadler's religious exemption request pertaining to the COVID-19 vaccine and its grant of her religious exemption request pertaining to the influenza vaccine. Based on the facts on the record, it would be reasonable for a jury to question any assertion that one exemption would impose an undue hardship, but the other would not.

Accordingly, based on the record in this case, even if TriHealth had informed Nadler at the time of its denial of her religious exemption request that her proximity to immunocompromised patients was a rationale behind its denial of her request, summary

21

judgment would still be improper. There exists a genuine issue of material fact as to whether granting Nadler's religious exemption request would impose an undue hardship on TriHealth. As a result, TriHealth's request for summary judgment as to Nadler's religious discrimination claims is denied. Nadler's religious discrimination claims shall proceed.

## II. Disability Discrimination Claims

TriHealth next asserts that the Court should grant summary judgment on each of Nadler's disability discrimination claims, including claims under Ohio and federal law for failure to accommodate, hostile work environment, and retaliation. (Motion for Summary Judgment, Doc. 27, Pg. ID 566.) Because disability discrimination claims under Ohio law employ the same analysis as the ADA, the Court analyzes Nadler's Ohio and federal claims together. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004). The Court addresses each of Nadler's claims in turn.

### A. Failure to Accommodate

TriHealth first argues that Nadler's claims for failure to accommodate fail as a matter of law. (Motion for Summary Judgment, Doc. 27, Pg. ID 566–67.) "In order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, [a plaintiff] must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603

22

(6th Cir. 2018) (cleaned up). While "[a]n employee might not always need to show [her] accommodation is medically necessary to win a failure to accommodate claim," she "must do so when asked by [her] employer." *Tchankpa*, 951 F.3d at 813. And, "employers are entitled to medical documentation confirming the employee's disability and need for accommodation." *Id.*

TriHealth argues that because the ailments noted by Nadler's physician were not contraindications for the vaccine listed by vaccine manufacturers and the CDC, Nadler cannot show that her request for exemption from vaccination was medically necessary. (Motion for Summary Judgment, Doc. 27, Pg. ID 566–67.) In support, TriHealth cites several out-of-circuit cases holding that when the plaintiff's disability is not a contraindication for the vaccine, the request for exemption from vaccination is not sufficiently related to the disability to support a finding that the exemption is medically necessary. (*Id.* (citing *Together Emples. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 434 (D. Mass. 2021), *affirmed* 32 F.4th 82 (1st Cir. 2022); *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018); *Harriss v. City of Carbondale*, No. 22-CV-2935, 2024 U.S. Dist. LEXIS 91252, at *8 (S.D. Ill. May 21, 2024)).) TriHealth also cites a case from this district dismissing a discrimination claim under the Rehabilitation Act because the plaintiff did not allege his claimed disability was a CDC-recognized contraindication. (Motion for Summary Judgment, Doc. 27, Pg. ID 567 (citing *Warman v. Mount St. Joseph Univ.*, No. 1:22-CV-229, 2024 U.S. Dist. LEXIS 1043, at *20 (S.D. Ohio Jan. 3, 2024)).)

The Court agrees that "where the claimed disability is not a contraindication for the vaccine, the requested accommodation does not sufficiently relate to the claimed

23

disability" for purposes of a failure to accommodate claim under the ADA. *Together Emples.*, 573 F. Supp. 3d at 434. But, while the contraindications listed by the CDC and the vaccine manufacturers are relevant to any analysis regarding the medical necessity of a vaccine exemption, they are not entirely dispositive. This is especially the case here because, as Nadler points out, TriHealth granted medical exemption requests for employees with conditions that were not listed as contraindications by the CDC, including Guillain-Barré Syndrome and pregnancy. (Blatt Dep., Doc. 25, Pg. ID 516–17, 521–22.) In other words, TriHealth held Nadler's request for exemption to a different standard than it did other medical exemption requests. Thus, a jury could reasonably question TriHealth's assertion that Nadler's accommodation request was not medically necessary because TriHealth was inconsistent in applying its purported requirement that employees demonstrate a listed contraindication in order to receive a medical exemption.

The Court is also unwilling to find that the CDC and vaccine manufacturer contraindications are entirely dispositive here because Nadler's physician noted in her medical exemption request that a COVID-19 vaccination was contraindicated due to her immune system disorders, allergic reactions, anemia with fatigue, and shortness of breath. (COVID-19 Vaccine Medical Exemption Request, Doc. 24-2, Pg. ID 403.) Nadler also sent TriHealth a letter from her physician detailing additional ailments with which she was diagnosed, outlining her treatment plan, and recommending that she not receive a COVID-19 vaccine due to the potential for "immune system disruption" and "negative side effects." (Cole Letter, Doc. 24-2, Pg. ID 421.) With this information in mind, the Court declines to make a finding of fact as to whether Nadler's request for exemption from the

24

COVID-19 vaccine was sufficiently related to her medical conditions as to render an exemption medically necessary. This is instead a question for a jury, as a juror could reasonably find, based on Nadler's medical background, that an exemption was indeed related to her medical conditions and thus medically necessary. A genuine issue of material fact exists as to the medical necessity of Nadler's exemption request, so her disability discrimination claims for failure to accommodate under the ADA and Ohio law shall proceed.

### B. Hostile Work Environment

Nadler does not address TriHealth's argument that the Court should grant summary judgment on her claims for hostile work environment. (*See* Motion for Summary Judgment, Doc. 27, Pg. ID 567–69; Response, Doc. 29.) "When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited." *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 325 (6th Cir. 2023). Thus, to the extent Nadler makes claims for hostile work environment, those claims are deemed abandoned.

### C. Retaliation

Finally, TriHealth argues that the Court should grant summary judgment on Nadler's claims for retaliation. (Motion for Summary Judgment, Doc. 27, Pg. ID 569–71.) To establish a prima facie case of retaliation, "[t]he initial burden falls on [the plaintiff] to present a prima facie case of retaliation. That requires [the plaintiff] to establish that: (1) [she] engaged in activity protected under . . . the ADA; (2) [the defendant] knew of this protected activity; (3) [the defendant] then took adverse action against [the plaintiff]; and

25

(4) there was a causal connection between the protected activity and the adverse action." *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

TriHealth asserts that Nadler cannot establish the fourth element of a prima facie case of retaliation under the ADA—causation between the protected activity and the adverse action. (Motion for Summary Judgment, Doc. 27, Pg. ID 569.) TriHealth argues that it took adverse action against Nadler because she failed to provide sufficient information showing that she had a medical reason for exemption, and she failed to vaccinate after TriHealth denied her request for exemption. (*Id.*) In response, Nadler contends that the causal connection between her exemption request and the termination of her employment is that TriHealth failed to fully and meaningfully consider her accommodation request—especially because it held other requests to a different standard, as discussed above. (Response, Doc. 29, Pg. ID 722.)

The Court first observes that the record supports the factual assertions of both parties here. With that said, the question before the Court is whether there was a causal connection between the protected activity and the adverse action—the protected activity being Nadler's request for medical exemption from the COVID-19 vaccine, and the adverse action being the termination of her employment. The facts on the record demonstrate that Nadler was terminated for her unvaccinated status and not for her decision to engage in the protected activity of requesting a medical exemption from vaccination. It cannot be said that, but for Nadler's medical exemption request, her employment would not have been terminated. *See Foltz v. Int'l Union*, No. 24-1298, 2025 U.S. App. LEXIS 4106, at *5–6 (6th Cir. Feb. 21, 2025) (noting that "causation" in this

26

context means "but-for causation," and that "[a]lthough the plaintiff's burden is not onerous at the prima facie stage, [s]he still must present evidence that allows for 'an inference . . . that the adverse action would not have been taken in the absence of the protected conduct'").

Although it may be found that TriHealth missed the mark in its decision to deny Nadler's exemption request, the record shows that it did give Nadler the ability to vaccinate and remain employed with TriHealth. (02/08/2022 TriHealth Email, Doc. 24-2, Pg. ID 422.) This demonstrates that TriHealth was prepared to allow Nadler to remain employed after her request for exemption, meaning that the request cannot be the but-for cause of her termination. Thus, there is no genuine issue of material fact regarding the reason TriHealth terminated Nadler's employment. Accordingly, Nadler fails to demonstrate causation between her exemption request and the eventual termination of her employment. Nadler's claim for retaliation under the ADA fails as a result.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED IN PART AND DENIED IN PART**;

2. Summary judgment is **ENTERED** in favor of Defendants on Plaintiff's disability discrimination claims for hostile work environment and retaliation; and

3. Plaintiff's religious discrimination claims and her disability discrimination claims for failure to accommodate **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

28